### 15201.  SOUTHERN RAILWAY COMPANY *v.* HARPER, adm'x.

1. Section 2486 of the Code of Alabama (set out in the opinion), under which this action was brought for the negligent homicide of the plaintiff's intestate, as construed by the courts of that State, is altogether punitive in nature and requires the jury to assess such damages as they may deem necessary to accomplish the defendant's punishment, without regard to actual compensation.

2. Accordingly, testimony that the intestate was at the time of the homicide in perfect health was irrelevant, and its admission was error. But the admission of evidence which is merely irrelevant or immaterial is not reversible error unless a reasonable likelihood of prejudicial effect appears, which does not appear in this case.

3. The negligence specified being the running of a passenger-train at the speed of 60 miles per hour over a defective track at a curve, evidence that the particular car in which the decedent was killed, unlike others in the train, was a wooden car was not irrelevant as tending in no way to illustrate the degree of the defendant's culpability in the particular negligence charged. If it was otherwise as to evidence that the train was actually carrying other passengers than the decedent, its admission was harmless under the facts of this case.

4. In an action against a railroad company for death resulting from a defective track, the plaintiff may not only show the defective condition of the track at the place of the accident, but may show its condition in the vicinity on either side thereof, as corroborative.

5. In charging the jury that "the admeasurement of the recovery must be by reference alone to the quality of the wrongful act or omission, the degree of culpability involved in the doing of the act, or in the omission to act, as required by the dictates of extraordinary care and prudence, and without any reference to or consideration of the loss or injury the act or omission may occasion to the living," the court did not err for the reason assigned, that the degree of the defendant's culpability should be determined by the jury without regard to the standard of care owing by the defendant to the passengers upon the train.

6. A verdict was found for the plaintiff in the sum of $20,000. Pending the defendant's motion for a new trial the plaintiff voluntarily wrote off $5,000. The trial judge thereafter overruled the motion. Assuming that

this court, in deciding whether the recovery was excessive, should look only to the verdict as originally rendered, it cannot be said that the verdict was so large as to lead to the conclusion that it was induced by prejudice, bias, or mistake on the part of the jury.

DECIDED APRIL 25, 1924.

Action for damages; from city court of Atlanta—Judge Reid. November 16, 1923.

*McDaniel & Neely,* for plaintiff in error.

*W. H. Lewis, John T. Dennis,* contra.

BELL, J.  Mary E. Harper, as administratrix of the estate of Cooley W. Harper, brought an action in the city court of Atlanta against the Southern Railway Company for the negligent homicide of her intestate, who was killed in a wreck of its train while he was riding thereon in the service of the government as a railway mail clerk.  The defendant received consideration from the government for his carriage.  The action was based upon section 2486 of the Code of Alabama, in which State the homicide occurred, providing as follows:  "A personal representative may maintain an action, and recover such damages as the jury may assess, for the wrongful act, omission or negligence of any person, or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission or negligence, if it had not caused death; such action shall not abate by the death of the defendant but may be revived against his personal representative; and may be maintained, though there has not been prosecution, or conviction, or acquittal of the defendant for the wrongful act, or omission or negligence; and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions.  Such actions must be brought within two years from and after the death of the testator or intestate."

It is alleged that there was a curve upon the railroad-track at the place where the train was derailed, and consequently wrecked, and that the defendant's negligence consisted in the operation of the train at that place at the rate of 60 miles per hour and in failing to maintain its roadbed in proper condition.  The plaintiff recovered a verdict for $20,000.  The defendant made a motion for a new trial, pending which the plaintiff voluntarily wrote off $5,000.  Thereafter the motion was overruled, and the defendant

excepted. As recited in the motion, liability was conceded, and the only insistence of the plaintiff in error is that the court erred in certain respects influencing the amount of the verdict, and that the verdict is excessive.

1. Each of the points insisted upon will be examined in the light of the construction which the courts of Alabama have placed upon the statute on which the action was based. The plaintiff in error urges that this is proper, and cites as authority a number of decisions by the courts of that jurisdiction. It was held by the Supreme Court of that State in Richmond & Danville R. Co. v. Freeman, 97 Ala. 289 (11 So. 800), that the statute in question is punitive in its nature, and requires the jury to assess, without regard to actual compensation, such damages as they may deem necessary to effect the punishment of the defendant; that "the admeasurement of the recovery must be by reference alone to the quality of the wrongful act or omission, the degree of culpability involved in the doing of the act or in the omission to act, as required by the dictates of care and prudence, and without any reference to or consideration of the loss or injury the act or omission may occasion to the living." This interpretation seems to have been uniformly adhered to by numerous later decisions, some of them of recent date.

2. The plaintiff was allowed to testify that the decedent was in "perfect health," over objection of the defendant that the evidence was irrelevant and immaterial, the court saying: "I will leave that in; that may tend to illustrate his conduct, if it gets involved in the case. I don't know whether it will or not." In view of the construction which must be placed upon the Alabama statute, the objection was well taken. "In an action under [the section of the Alabama code set out above], providing that the personal representatives of one killed by a wrongful act may recover such damages as the jury may assess, evidence of the age, physical and mental condition, earning capacity, and occupation of deceased, and the amount contributed by him to the support of those dependent on him, was properly rejected as irrelevant, since the act is not compensatory, but punitive, in its nature." Louisville & Nashville R. Co. v. Tegner, 125 Ala. 593 (1) (28 So. 510). Thus it would appear that the court was in error in admitting the evidence objected to. This is not to say, however, that for this

reason a new trial should be ordered. The judge seems to have anticipated that some issue might probably arise in regard to contributory negligence on the part of the decedent, but no such issue developed, whether it could become relevant in any case like the present. It is unnecessary to say whether the rule is here applicable that where evidence is admitted provisionally and there is no motion thereafter made to exclude it, a new trial should not be granted upon the ground of its admission. See *Davis* v. *Bellah,* 29 *Ga. App.* 409 (1) (116 S. E. 30). The judge's statement, made in the presence of the jury, tended to indicate that he did not consider the evidence relevant, unless it should illustrate the conduct of the decedent. Furthermore, he explicitly told the jury in the charge that they were to fix the damages solely by the degree of culpability in the defendant's acts.

Again, the admission of evidence which is merely irrelevant and immaterial is not ground for reversal "unless a reasonable likelihood of a prejudicial effect appears." *Watkins* v. *Woodbery,* 24 *Ga. App.* 80 (2) (100 S. E. 34). Even without this evidence in the record it was inferable that the decedent was in good health. He lived in Atlanta and was on his run discharging the duties of his employment. He had been regularly on duty indefinitely theretofore, according to testimony of one Hudson, assistant chief clerk in the railway mail service. In the decision of the Supreme Court of Alabama from which we have just quoted, it was held merely that it was not error to *exclude* evidence of this nature. We should, of course, hold the same. That is different, though, from adjudging that a new trial should necessarily result because of its improper *admission.* We cannot say that the defendant, under all the circumstances, was probably prejudiced by the testimony to the lone fact that the decedent was in perfect health.

3. Error is assigned upon the admission of evidence that the car in which the decedent was killed was a wooden car, upon the ground that the same was irrelevant and immaterial, and that the plaintiff had not alleged negligence in the use of such a car. There were other cars in the train, of steel structure. The plaintiff alleged that this particular coach was "crushed into splinters," and insists that merely by reason of this allegation the evidence was admissible, on the idea that allegations made and not stricken may be proved irrespective of their relevancy. See, on this ques-

tion, *Fleming* v. *Roberts,* 114 *Ga.* 634 (3) (40 S. E. 792); *Mayor &c. of Macon* v. *Melton,* 115 *Ga.* 153 (2) (41 S. E. 490); *Tifton &c. Ry. Co.* v. *Butler,* 4 *Ga. App.* 191 (4 *d*) (60 S. E. 1087). Regardless of whether the averment would amount to a statement that it was a wooden structure, and, also, of whether the rule of practice insisted upon is correct or applicable, the testimony in our opinion was admissible. The degree of culpability in the acts of negligence actually alleged should be determined, we think, in view of the surrounding circumstances. A jury would be authorized to find that a carrier of passengers would be more blamable for negligence in the condition of a track, if using it in the running of wooden cars, than if using it in the same condition in the running of steel cars, on the theory that the probability of injury or death in case of a derailment would in the former event be greater. For the same reason, a given speed might be more subject to censure in the case of wooden cars than in the case of steel cars. This is so regardless of whether independent negligence was charged or existed in the fact that one of the cars was wooden.

Another ground of the motion for a new trial complains that the court erred in admitting testimony of the witness Holland, that there were other passengers on the train besides the decedent. The plaintiff alleged that the decedent was killed upon a passenger-train, and that the defendant was negligent in running this train at the speed of 60 miles per hour over a defective track. Were the jury in their discretion not authorized to find that the wrongful quality in the specific negligence alleged was greater where it directly affected the defendant's duty to a number of persons than where it affected its duty to but one? Would the same neglect of the track, and the same speed, not be more serious if the train were filled with passengers than if the cars had been empty or it had been a freight-train? We think these questions can only be answered in the affirmative. But assuming that the statute seeks to punish the defendant's negligence only as it related to the decedent, we still think the admission of this evidence was not cause for a new trial. The witness testified without objection to the fact that the train was a *passenger-train* running from Jacksonville, Florida, to Kansas City, Missouri, known as No. 7. That it was a passenger-train was testified by another witness without objection. It would be inferred from the nature of

the train that it was carrying other passengers, and proof of a fact already to be inferred and about which there was no dispute could not have been harmful to the defendant, even if irrelevant. Compare *Battle* v. *Braswell,* 107 *Ga.* 128 (1) (32 S. E. 838); *A., B. & A. Ry. Co.* v. *Brown,* 129 *Ga.* 622 (3) (59 S. E. 278). The witnesses themselves were passengers in the same employment as the decedent. The evidence admitted *without objection* was the practical equivalent of that objected to. See *Cooley* v. *Bergstrom,* 3 *Ga. App.* 496 (2) (60 S. E. 220).

4. It is also complained that the court erred in admitting testimony that some of the cross-ties were decayed and the track in bad condition in front of the wreck. It appears from the record that the witness was testifying to a condition in the vicinity of the place where the train was derailed, commencing immediately in front of the engine and extending forward approximately 500 feet. The plaintiff could show the defective condition of the track not only at the place of the accident, but in the vicinity on either side thereof, as corroborative. Ohio Valley Ry. Co. *v.* Watson, 93 Ky. 654 (1) (21 S. W. 244, 19 L. R. A. 310, 40 Am. St. Rep. 211, and cases cited).

5. The court charged the jury as follows: "So the question of the amount of the damages is left to the jury, and the rule under which you will ascertain the amount is this, the purpose of the statute being the preservation of human life, regardless of the pecuniary value of a particular life to next of kin, under the statute of distributions, the admeasurement of the recovery must be by reference alone to the quality of the wrongful act or omission, the degree of culpability involved in the doing of the act, or in the omission to act, as required by the dictates of extraordinary care and prudence, and without any reference to or consideration of the loss or injury the act or omission may occasion to the living." This excerpt is assigned as error upon the ground that it required that the negligence which the defendant might be guilty of should be measured in part by the standard of extraordinary care owing by the defendant to the decedent, and in this way enhance the culpability attributable to the defendant in proportion to such care; whereas the defendant's blamability "either in degree, kind, or quantity could not be tested by a reference to the degree of care which it may have owed," and that the reference to extraordinary

care "necessarily caused the jury to inflate and enlarge the culpability attributable to the defendant." This is the substance and effect of the assignment, though it is amplified by additional language.

No Alabama decision directly in point has been cited. We believe that the courts of that State, however, would hold that where there is a duty of slight care, or ordinary care, a breach of the duty would not be so culpable as a breach of the duty of extraordinary care. If there were no duty at all, there would be no negligence. The higher or more exacting the duty, the greater is the degree of negligence in its breach. The greater the degree of negligence, the more culpable it is. In our opinion the charge was sound both in logic and in law.

It is conceded that the decedent was a passenger. No statute of the State of Alabama being pleaded or shown upon the subject, it will be presumed that the common law prevails in that State as to the degree of care owing by a carrier to its passengers. *Hill* v. *Chattanooga Ry. & Light Co.*, 21 *Ga. App.* 104 (1 *b*) (93 S. E. 1027); *Atlantic Coast Line R. Co.* v. *Barton*, 14 *Ga. App.* 160 (1), 162 (80 S. E. 530); *Rush* v. *Southern Ry. Co.*, 19 *Ga. App.* 521, 522 (91 S. E. 898). At common law carriers of passengers were bound to use extraordinary diligence. *Southern Railway Co.* v. *Cunningham*, 123 *Ga.* 90 (2) (50 S. E. 979); *Seaboard Air-Line Ry.* v. *Andrews*, 140 *Ga.* 254 (1), 255 (78 S. E. 925, Ann. Cas. 1914D, 165); *Southern Railway Co.* v. *West*, 4 *Ga. App.* 672, 675 (62 S. E. 141).

6. Finally, it is insisted that the verdict was excessive. "Where pending a motion for new trial by the defendant to set aside a verdict for damages consequent upon personal injuries received by the plaintiff, the latter by his counsel voluntarily, and without any suggestion from the court, reduced the verdict by writing off therefrom a certain sum, and the trial judge subsequently overruled the motion, but it does not appear that his refusal of a new trial was influenced by such reduction of the verdict; and where this court cannot say that the verdict as originally rendered by the jury was so excessive as to lead the court to suspect bias or prejudice on the part of the jury, the judgment of the court refusing a new trial will not be reversed on account of such volun-

18

tary reduction of the verdict." . *Savannah &c. Ry. Co.* v. *Godkin,* 104 *Ga.* 655 (4) (30 S. E. 378, 69 Am. St. Rep. 187).

Certain cases founded upon the same statute as this one are cited by the plaintiff in error in which the Supreme Court of Alabama affirmed *the grants* of new trials by the lower court on the ground that the verdicts were excessive. These cases, of course, do not show that the *refusal* of a new trial upon such ground would have been reversed. In Montgomery Light & Water Co. *v.* Thombs, 204 Ala. 678 (16) (87 So. 205), a verdict for $25,000 was ordered set aside unless $10,000 should be written off, and in Alabama Power Co. *v.* Talmadge, 207 Ala. 86 (22) (93 So. 548), a verdict was required to be reduced to $17,500, although it was said in that case, in respect of the defendant's negligence, "that no more culpable act or omission could have been found." It would appear that in neither of these cases did the defendant *owe more than ordinary care.* In other cases, verdicts were sustained, as follows: West *v.* Spratling, 204 Ala. 478 (23) (86 So. 32), a homicide case, where the negligence of the defendant innkeeper consisted in a failure properly to equip the hotel with fire escapes, verdict $15,000; Southern Express Co. *v.* Roseman, 91 So. 612, where a boy was killed in the public streets by the negligent operation of a truck, verdict $15,000; Louisville & Nashville R. Co. *v.* Phillips (99 So.), person killed upon railroad-track, verdict $15,000; Louisville & Nashville R. Co. *v.* Cross, 205 Ala. 626 (7) (88 So. 908), child killed on railroad-track, verdict $15,-000; Central of Georgia Ry. Co. *v.* Ellison, 199 Ala. 571 (10) (75 So. 159), person killed on railroad-track, after discovery by the defendant's servants, by an engine running at the rate of 25 miles per hour, verdict $16,000. As was said in regard to the others, it may be also observed in respect of the class of cases last cited that in none of them did it appear that the defendant was due a greater degree of care than ordinary care.

The plaintiff in error filed no pleadings and made no proof in the trial court as to the construction which the Alabama courts have placed upon the statute invoked in this case, and we have merely assumed with it that the decisions by those courts should be binding upon us in the construction of such statute, rather than persuasive only. But see *Georgia &c. Ry. Co.* v. *Sasser,*

4 *Ga. App.* 276 (7 *b*) (61 S. E. 505); *White* v. *Seaboard Air-Line Ry.*, 14 *Ga. App.* 139 (3) (80 S. E. 667); *Harper* v. *Louisville & Nashville R. Co.*, 141 *Ga.* 558 (81 S. E. 867). It may be that in no event should we be bound by the Alabama decisions upon the question of whether the verdict was excessive. Anyway, the acts of negligence were proved beyond question. The evidence tended to show that the track was in a woeful condition, and yet at the time of the derailment the train was being operated at a speed of approximately 60 miles per hour, as though the track were in perfect condition.

We cannot say that the verdict as "originally rendered" was so excessive as to lead to the conclusion that it was induced by prejudice, bias, or mistake on the part of the jury, and the judgment refusing a new trial will not be reversed on account of the voluntary reduction of the verdict.

*Judgment affirmed. Stephens, J., concurs. Jenkins, P. J., disqualified.*